B. A. DOLAN, Appellant, v. MIDLAND BLAST FURNACE Co., ET AL., Appellees.

Redemption from mortgage foreclosure: EQUITY: ACCOUNTING.
1 A mortgagor whose property has been sold on foreclosure, or his assignee, may maintain an equitable action to redeem if brought prior to the expiration of the statutory period of redemption, and where possession has been taken by the holder of the certificate of sale without assent he may have an accounting of the rents and profits and of any portion of the property converted by the certificate holder to his own use, for the purpose of ascertaining the amount required to make redemption.

Appeal: SUFFICIENCY OF NOTICE. The statement in an abstract that
2 appellant gave notice of appeal to defendant and the clerk of the court from which the appeal was taken, and secured his fees, is sufficient to confer jurisdiction over a simple statement in denial that the appeal was perfected as required by law and that the notice of appeal was insufficient.

*Appeal from Lee District Court.*— HON. HENRY BANK, Judge.

SATURDAY, JUNE 11, 1904.

SUIT in equity to redeem certain property from an execution sale under the foreclosure of a mortgage. The trial court sustained a demurrer to the petition, and plaintiff appeals.— *Reversed.*

*James H. Anderson,* for appellant.

*James A. Seddon* and *H. Scott Howell & Son,* for appellees.

DEEMER, C. J.— Defendant Midland Blast Furnace Company held a mortgage upon the property in question, executed by the then owner, John Gaffney. This mortgage

was foreclosed by action in the superior court of the city of Keokuk, and a decree was rendered June 26, 1901. Transscript thereof was filed in the office of the clerk of the district court of Lee county, and the land was sold under special execution issued from that court on August 6, 1902, to the Midland Blast Furnace Company. This suit was commenced August 6th, and was originally brought to enjoin the issuance of a sheriff's certificate or deed, and for the purpose of effectuating an equitable redemption. Plaintiff also asked judgment not only against the furnace company, but also against other defendants, for damages done to the property; claiming that he had purchased the equity of redemption from Gaffney, and that he was entitled to compensation for injuries done the property. On defendant's motion, he was compelled to strike certain allegations, claiming damages, from his petition, and to file a separate one therefor against the other defendants. Thereafter he amended his bill by reciting that after the execution sale, and before the expiration of the statutory period of redemption, the Midland Company, purchaser of the property, went upon the land, and took therefrom a large amount of fixtures and machinery, and converted to its own use more than sufficient to pay the debt due it, and that, by reason of that fact, plaintiff was entitled to have the certificate of sale and deed set aside and canceled, and the property declared to be his, free and clear of the incumbrance. To this petition the Blast Furnace Company demurred, and its demurrer was sustained.

This appeal is from that ruling, and the question is whether or not the mortgagor, or his assignee or grantee, may have an equitable action for redemption, and an ac-

1. REDEMPTION FROM MORT-GAGE FORE-CLOSURE: equity; accounting. counting from the holder of the certificate of sale, who has despoiled the property, and converted enough of it to his own use to satisfy any claim he may have under his certificate.

Plaintiff has not, of course, effected a statutory redemp-

tion. Indeed, he has not undertaken to do so. And defendant insists that, as he did not do so, he cannot come into court to enforce any supposed equitable right. On the other hand, it is argued that the holder of a sheriff's certificate of sale has nothing more than a lien upon the land for the amount of his investment; that he is not entitled to the possession of the property until he receives his deed, and that if he goes into possession, commits waste, receives the rents and profits, or converts any of the property to his own use, he is liable to be held to account therefor in an equitable action to redeem; and that, if he has received from the property more than enough to satisfy his claim, his deed and certificate of sale should be canceled.

Under our authorities, it must be conceded that the holder of a sheriff's certificate of sale under a mortgage foreclosure is not entitled to the possession of the property, nor has he any title to the lands covered thereby. At most he has nothing more than a lien, or perhaps an inchoate or conditional right to an estate. The mortgagor and his grantee hold the legal title until divested by a sheriff's deed. In other words the mortgagor's title is not extinguished until that time. He or his grantee had until the sale under the foreclosure decree, an equitable right of redemption, and after the sale under that decree a statutory right of redemption. Either of these rights will be recognized, enforced and protected by a court of equity. See, as supporting these views, *Greenlee v. Mercantile Ins. Co.*, 102 Iowa, 427; *Varnum v. Winslow*, 106 Iowa, 287, and cases cited.

It is also true that, under our holdings, a right of redemption is said to be statutory, and must be exercised in the manner pointed out by statute. *Case v. Fry*, 91 Iowa, 138; *Williams v. Dickerson*, 66 Iowa, 106; *Lombard v. Gregory*, 90 Iowa, 684. Although it has also been held that, as to a junior lienholder, not made a party to a mortgage foreclosure, he has an equitable right of redemption, independent of the statutory one, which may be exercised

notwithstanding the statute.   In one of the cases so holding
it is said, in substance, that the equitable right of redemp-
tion which exists independent of statute will be enforced
until taken away by express statutory enactment.   *Spurgin
v. Adamson,* 62 Iowa, 661; *American Co. v. Burlington
Ass'n,* 61 Iowa, 464.

Which of these principles is to govern here?   Has a
mortgagor, or his grantee, whose property has been sold at
foreclosure sale, no remedy against a certificate holder who
takes possession of and despoils the property during the
year for redemption, but to make statutory redemption,
and thereafter to bring suit against the despoiler to recover
the damages done to the estate?   Appellees' counsel answer
these interrogatories in the affirmative, and ask us to so
hold.   While there is much to be said in favor of his posi-
tion, we do not think that equity is impotent under such
circumstance.   Had plaintiff allowed the statutory period
of redemption to expire without taking any action to secure
the fruits thereof, he would, of course, be without remedy,
for the title to the land would have passed from him through
the sheriff's deed.   But in this case the action was brought
before the expiration of the statutory period.   It is for
an accounting, and to determine the amount plaintiff should
pay in order to secure the relinquishment of the lien held
by the Midland Blast Furnace Company.   Doubtless plain-
tiff might have made statutory redemption without waiving
his right to recover damages done the estate by the certificate
holder, but the pivotal question here is, was he bound to do
so, under the facts conceded by the demurrer?   When a
mortgagee takes possession of land, he is ordinarily com-
pelled to account for the rents and profits arising therefrom,
and the mortgagor may bring an action for an accounting,
and to establish the amount he should pay in order to dis-
charge the lien of the mortgage.   The holder of a certificate
of purchase during the statutory period of redemption has
little, if anything, more than a lien upon the property,

which is subject to be divested at any time by the payment of the amount of his purchase, with interest, costs, etc. When he has received that amount, his lien ceases.

Appellee practically concedes that if plaintiff had paid the amount invested by the certificate holder, although not in strict conformity to the redemption statutes, he would be entitled to maintain this suit. But he says there was no payment here, and therefore a court of equity has no jurisdiction. He is right, of course, in saying that there has been no payment, as we ordinarily understand that term. But is that fact determinative of the question of the jurisdiction of a court of equity? We think not. The reason why he might maintain the action in the one case, and not in the other, is not plain. Indeed, we think that in either case he may resort to a court of chancery for relief. In the one case he has voluntarily parted with his money for the purpose of extinguishing the lien, while in the other the property, or a part of it, covered by the lien, has been taken without his consent and converted to the use of the lienholder. It is no hardship on the lienholder to say that he must account for what he has received from the property while he held merely a lien thereon, and that it is an idle ceremony to require the mortgagor or his grantee to pay over his money, and then to bring suit to recover the same back again. One of the purposes of equity is to avoid and prevent a multiplicity of suits, and to hinder circuity of action.

So far as we can discover, this exact question has never before been raised in this State, although we have decisions which, to our minds, in principle, sustain the right of action. Thus, in *Bitzer v. Becke,* 120 Iowa, 66, plaintiff, a landowner, was permitted to make redemption from a tax sale in an equitable action to determine the amount of taxes which might properly be assessed and levied against his land. In that case the power of a court of equity to effectuate justice in the redemption of lands from tax sale was

fully considered, and it was said, " Equitable circumstances no matter how new or complicated, may justify a court of equity in extending the time to redeem beyond the statutory period." It is important, we think, to distinguish between the right of redemption given by statute and the equity of redemption. Of course, the equity may be cut off by foreclosure. Indeed, that is the very object of the proceedings. But it is not cut off, under our statutes, until the expiration of the period allowed by law, and not then if equitable circumstances intervene which would justify the interposition of a chancellor. This is illustrated to some extent by *Mayer v. Farmers' Bank,* 44 Iowa, 212. Looking to the authorities from other States, it appears that such actions have been sustained, and that an accounting has been had not only for rents and profits, but also for waste committed on the property. *Givens v. McCalmont,* 4 Watts, 460; *Seaver v. Durant,* 39 Vt. 103; *Onderdonk v. Gray,* 19 N. J. Eq. 65. Prof. Pomeroy, in his work on Equity Jurisprudence, vol. 3 (2d Ed.) sections 1190, 1218, 1219, gives countenance to these doctrines. *Horn v. Indianapolis Bank,* 125 Ind. Sup. 381 (25 N. E. Rep. 558, 9 L. R. A. 676, 21 Am. St. Rep. 231), also supports the conclusions reached.

It must be remembered that this action was commenced before the statutory period of redemption had expired, and that plaintiff offered to pay whatever amount it should be adjudged on an accounting was due the certificate holder. It may be that a sale under foreclosure cuts off the equity of redemption of the mortgagor, and that his rights thereafter are statutory; yet it does not follow that equity will not grant relief, and refuse to call the certificate holder to an accounting. Such holder has no right to the possession of the property until the expiration of the statutory period of redemption. If he takes possession without the assent of the redemptioner, receives the rents and profits, or converts the property, or some part thereof, to his own use, we think

he should be compelled to account therefor in an action in equity to determine just how much the mortgagor must pay to remove the lien from his land. The authorities upon the question are not numerous, but we think that the rule here adopted is sound in principle and sustained by the adjudications.

II. Appellee argues that the case should be dismissed for want of jurisdiction. This contention is bottomed upon insufficiency of the notice of appeal. The statement in the abstract is that "appellant gave notice of appeal to the Supreme Court to defendants and to the clerk of the district court of Lee county, Iowa, at Keokuk, in which said court the case was heard, and secured the clerk his fees." In an amendment to the abstract appellee denied that appellant had ever perfected his appeal in the manner required by law, and stated that the alleged notice of appeal was wholly insufficient to give this court jurisdiction. He did not set out the alleged notice, nor did he make any other denials than the one quoted. From the argument, we discover that the points relied upon are that it is not stated in the abstract that the notice was in writing, nor that the appeal was from any order or judgment of the court, nor that the notice was served as required by law. None of these points are tenable. *Day v. Hawkeye Co.,* 72 Iowa, 597; *Augustine v. McDowell,* 120 Iowa, 401. *Merrill v. Timbrell,* 95 N. W. Rep. 237, relied upon by appellee, is not an authority. In that case a rehearing was granted, and a contrary result reached. See same case in 123 Iowa, 375. Appellee's denial is not sufficiently specific to require a certification of the record. The first part of it is a mere conclusion, and the second practically admits the service of a notice of appeal, but questions its sufficiency to give us jurisdiction. In this state of the record, we need only consider the statements made in the abstract. Jurisdiction appears.

2. APPEAL: sufficiency of notice.

But for the error pointed out in the first division of

this opinion, the ruling sustaining the demurrer must be, and it is, *reversed.*